GARDINER vs. SCHERMERHORN and others.

The English doctrine in relation to opening biddings upon a Master's
sale is not recognised in this State, or the English practice adopted.

Before confirmation of report of sale, a re-sale will be ordered when it
is equitable under the peculiar circumstances of the case; and when
there is *fraud* or *misconduct* in the purchaser or any person connected
with the sale—when there is *surprise* upon any party in interest,
created by the conduct of the purchaser or other person directing the
sale—when the interests of infants are concerned in opening the
sale—or when a guarantor has misunderstood his liability.

Mere inadequacy of price is not of itself a sufficient reason for opening
the sale.

When the purchase is fair and free from fraud, suspicion, or surprise,
a re-sale will not be ordered if the purchaser has a subsequent lien
which would be perilled by a re-sale.

Oct. 1839.

Gardiner
v
Schermer-
horn and
others.

PETITION for a re-sale of property sold by a Master under a decree of foreclosure of sale.

The petitioner states that he is a subsequent incumbrancer by mortgage upon the mortgaged premises and the Eagle Tavern in Rochester, adjoining, and offers to bid $6000 for the premises, upon re-sale. The premises were sold for about $700. The petitioner was ignorant of the rule that sales in cities where a daily paper is published, could be made upon three weeks' notice. The sale was not actually made until six weeks after the decree. The complainant was purchaser, and bid off the premises at the amount of his decree. His affidavit shows that he was also a judgment creditor of the mortgagor to a large amount, and that the Georgia Lumber Company were also judgment creditors of the mortgagor, and were not made parties defendant in the foreclosure. The petitioner offered to pay the amount bid by the purchaser, which he declined unless his judgment and that of the Georgia Lumber Company were protected. The mortgagor had no personal property. The Eagle Tavern was incumbered about $50,000, and reputed to be worth $70,000 or $80,000. And it did not appear that the mortgagor had any other property than the Eagle Tavern, upon which the mortgage of the petitioner was an incumbrance as well as upon the mortgaged premises sold.

*M. F. Delano,* for complainants.

*W. Hubbell,* for applicants.

THE VICE CHANCELLOR. The rules by which the Court of Chancery will be governed upon applications to open biddings or for the re-sale of pro-

perty sold by a Master under a foreclosure decree, seem to be laid down or referred to in Cullin *vs.* Whipple, 13 Wendell Rep. 224, and in Duncan *vs.* Dodd, 2 Paige, 99, and in the cases there referred to. From the principles to be extracted from the decided cases, it is to be inferred, 1. That the English doctrine in relation to opening biddings is not recognised in this State or the English practice adopted. 2. That before confirmation of report of sale, a re-sale will be ordered under certain circumstances, but no general rule has yet been laid down which shall govern the decision of the court upon such applications ; but each case must be decided upon its own peculiar equity. In the decisions so far made upon this point, it has been held that a re-sale will be ordered in the following cases :

1. When there is *fraud* or *misconduct* in the purchaser or other person connected with and directing the sale.

2. Where there is a *surprise* upon any party in interest, created by the conduct of the purchaser or other person directing the sale, so that the party in interest is misled.

3. When the interests of infants are concerned in opening the sale.

4. When a guarantor who is liable to a personal decree, has misunderstood his liability.

It has never yet been decided that mere inadequacy of price was a sufficient reason of itself to open a sale.

In this case, the mortgaged premises are situated in the city of Rochester, and were sold under a new rule of this court, which took effect on 20th May last, by publication of a notice of sale, for three weeks only.

## 104

The application to open the sale is made by a subsequent mortgagee upon the ground that he was ignorant of the existence of such a rule, and that he intended to have bid at the sale, and that the value of his mortgage is affected by the sale of the premises at an inadequate price; and he offers to make an advance of fifty per cent. upon the sum for which the premises were sold.

If this constituted the whole case, I should have but little doubt. A solicitor may well be ignorant of a recent rule, and that is held sufficient in many cases to excuse a neglect or default, so as to be let in upon terms. If he was let in here, as the case is so far stated, the complainant would obtain his whole mortgaged debt, (he having bid that amount,) and the property would pay an additional amount of the debt of the mortgagor, and thus substantial equity would be attained; and I could in such case see no objection to granting the application.

But there are further facts in this case. There is no pretence that the complainant or any other person has taken any step to mislead or surprise the applicant. He has purchased the property fairly as he might do under the rules of this court, and no one can justly complain of any improper conduct on his part. The applicant, if he has lost any right, has lost it by his own ignorance, negligence, or inattention. This ignorance might be excused, unless there are other equities growing out of the sale or flowing from it, which would properly prevent the applicant from being let in. It is necessary then to examine the respective situations of the parties after the Master's sale. It appears from the affidavit of the complainant, that in addition to his mortgage he had a

judgment for other moneys advanced to the mortgage

debtor, and for liabilities incurred for him. It appears also that the mortgage debtor is destitute of personal property, and that his real estate is very heavily incumbered. Indeed, it does not appear from the papers, that the mortgage debtor has any other real estate than the mortgaged premises and the Eagle Tavern, which last property is encumbered to the amount of more than $50,000. It may be fairly supposed under such circumstances that the complainant would purchase in the mortgaged premises at as low a price as possible, with a view of realizing out of it eventually the amount of his judgment. The effect of opening the sale according to the prayer of the applicant, would be to defeat this object, and enable the applicant to interpose his mortgage before the complainants' judgment, and throw back the complainant for the collection of his judgment upon real estate previously incumbered to the amount of more than $50,000. It seems to me very apparent that the complainant should not be driven from the position in which he has placed himself by his diligence, unless he has attained that position by some improper practice. Applications of this kind are made to the favor of the court, and will not be sustained to defeat a diligent creditor who has obtained a fair advantage. The equities of the case must be looked at as they stand at the time of the application, and these seem to me to preponderate in favor of the complainant.

Strictly, the remisness of the applicant is scarcely sufficiently excused. Though the notice of sale was published but three weeks, yet it appears that the applicant made no inquiry about it until six weeks

14

Oct. 1839.

had elapsed after the decree, within which time certainly he must have presumed that the premises would have been sold. This, however, is not the ground upon which I place the decision. Neither do I place it upon the ground that the Georgia Lumber Company have any vested rights which are to be regarded here; but simply upon the ground that the complainant, to secure the payment of his judgment, has a superior equity, and has a right to retain the property. If the facts stated in the papers are true, that the Eagle Tavern is worth enough to pay the previous incumbrances and the mortgage of the applicant, the result to which I have come will not deprive the applicant of any portion of his debt; while a contrary decision would at least render the collection of the complainant's judgment more difficult.

Application denied with costs to be taxed.(*a*)

*(a)* This decision was affirmed on appeal to the Chancellor.